UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT MUIR, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *    Civil No. 14-30092-MGM |
| TOWN OF STOCKBRIDGE, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER REGARDING PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Dkt. Nos. 14, 19)

April 4, 2016

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Scott Muir ("Plaintiff") brings this action against the Town of Stockbridge (the "Town" or "Defendant") pursuant to 42 U.S.C. § 1983.[1] The claims arise out of Plaintiff's dismissal as an employee of Defendant. Plaintiff was employed by Defendant in 2012 when he was arrested for sexual assaults alleged to have occurred several years earlier. Defendant placed Plaintiff on suspension, pursuant to Mass. Gen. Laws ch. 268A ("Chapter 268A") § 25, for the duration of his criminal proceedings. Plaintiff was acquitted in a jury trial in January 2014 and sought reinstatement to his previous position. Plaintiff was not returned to his job—the parties contest whether he was reinstated and then put on a separate paid administrative leave in February 2014, or whether his original suspension remained in place. Plaintiff was formally dismissed in March 2014.

---

[1] Plaintiff originally named Stephen Shatz, in his official capacity as Chairman of the Town's Board of Selectmen, as a second defendant. The parties agreed at the hearing that Mr. Shatz should be terminated as a defendant because "[a] suit against a public official in his official capacity is a suit against the governmental entity itself," *Surprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005), and the court entered an order to that effect (*see* Dkt. No. 32).

In Count I, Plaintiff alleges Defendant deprived him of his 14th Amendment property rights by denying his right to be reinstated to his employment with Defendant following his acquittal pursuant to Chapter 268A. In Count II, Plaintiff alleges Defendant deprived him of his 14th Amendment liberty interest in obtaining future employment by disseminating a false and defamatory impression about him and failing to provide him with a post-termination hearing. Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons set forth below, the court allows Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

## II.     STANDARD OF REVIEW

The entry of summary judgment is warranted when the evidence produced in a case shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In ruling on a motion for summary judgment, the court must "draw all reasonable inferences in the nonmovant's favor," but the court must not "draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Id.* "If a nonmovant bears the ultimate burden of proof on a given issue, she must present 'definite, competent evidence' sufficient to establish the elements of her claim in order to survive a motion for summary judgment." *Id.* at 795-96 (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). When the parties file cross-motions for summary judgment, the court must "employ the same standard of review, but view each motion separately, drawing all inferences in favor of the nonmoving party." *Fadili v. Deutsche Bank Nat'l Tr. Co.*, 772 F.3d 951, 953 (1st Cir. 2014).

## III.    FACTS

This case involves a lengthy factual and procedural background that is well known to the parties, which the court briefly summarizes. From 2002 until 2007, Plaintiff worked for the

Berkshire Hills Regional School District (the "School District") as a Student Center Support Coordinator. His job entailed working with behaviorally challenged elementary school children. (Dkt. No. 15-1, Pl. Statement of Facts ("SOF") ¶ 5.) In June 2007, due to a loss of funding, Plaintiff's position at the School District was eliminated. (*Id.* ¶ 7.) In September 2007, Plaintiff was hired by Defendant as its Facilities Director, and he was hired to an additional position as Defendant's Emergency Management Director in January 2008. (*Id.* ¶¶ 8-9.)

On April 5, 2012, Plaintiff was arrested by the Massachusetts State Police and charged with 20 counts of sexual assault, which were alleged to have occurred between 2003 and 2006 while he was an employee of the School District. (*Id.* ¶ 14; Dkt. No. 21, Def. SOF ¶ 1.) No criminal charges were based on the timeframe when Plaintiff was employed by Defendant. (Pl. SOF ¶ 18.) On May 19, 2012, Defendant suspended Plaintiff without pay (*see* Pl. SOF ¶ 15; Def. SOF ¶ 5) pursuant to Chapter 268A § 25, which states that a town may suspend an employee without pay during any period when such employee is under indictment for misconduct.[2]

On January 28, 2014, Plaintiff was acquitted by a jury of all criminal charges after 94 minutes of deliberation. (Pl. SOF ¶ 21; Def. SOF ¶ 6.) Chapter 268A § 25 states that, if a suspended employee is acquitted of the charges against him, "his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension." On February 19, 2014, Defendant sent Plaintiff a letter enclosing a check for all back pay owed to him between May 19, 2012 (the day his suspension began) and February 6, 2014. The letter stated "[a]dditional payments will be made to you for the remaining period of the suspension when the effective date of

---

[2] Chapter 268A § 25 reads, in relevant part: "An officer or employee of a . . . town . . . may, during any period such officer or employee is under indictment . . . for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority. . . . Any person so suspended shall not receive any compensation or salary during the period of suspension. . . . If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension."

3

the removal of your suspension has been determined. This payment shall not be construed as an admission of your right to reinstatement, a determination which is presently being considered." (Pl. SOF ¶¶ 23-24; Dkt. No. 16, "Pl. SOF Exhibits," Ex. 2; Def. SOF ¶ 7.) On February 20, 2014, Plaintiff's attorney William Rota (who is not representing Plaintiff in this matter) sent a letter to inform Defendant that Plaintiff was awaiting his reinstatement. (Pl. SOF ¶ 25; Pl. SOF Exhibits, Ex. 3; Def. SOF ¶ 9.)

On February 21, 2014, Defendant sent another letter to Plaintiff, which stated that he was "being placed on indefinite administrative leave with pay." (Pl. SOF ¶ 26; Pl. SOF Exhibits, Ex. 4; Def. SOF ¶ 10.) The letter also informed Plaintiff that the Town's Board of Selectmen (the "Board") would go into executive session on March 11, 2014 "to discuss [Plaintiff's] discipline or dismissal" with respect to his two employment positions. (Pl. SOF ¶¶ 26-27, 29; Pl. SOF Exhibits, Ex. 4; Def. SOF ¶¶ 10-11.) The letter did not indicate why Plaintiff was being placed on administrative leave. (Pl. SOF ¶ 27.) Stephen Shatz, the Chairman of the Board, testified that he viewed the letter as a notice of hearing and believed it would be inappropriate to inform Plaintiff of the possible reasons for dismissal or discipline in the letter. (*Id.* ¶ 28; Dkt. No. 23, Def. Reply SOF ¶ 28.) While Mr. Shatz asserts no decision to dismiss Plaintiff had been made prior to the executive session, (*see* Pl. SOF ¶ 33), Mr. Shatz personally believed Plaintiff would be dismissed following the meeting, "but subject to . . . hearing from [Plaintiff] and his representative." (*Id.* ¶ 38; Def. Reply SOF ¶ 38.)

On March 11, 2014, the executive session took place. (Pl. SOF ¶ 35; Def. SOF ¶ 12.) The Board followed a script that had been prepared ahead of time. (Pl. SOF ¶¶ 37, 39.) During the executive session, Mr. Shatz said, "[t]he decision to reinstate is, in effect, a decision to hire." (Pl. SOF Exhibits, Ex. 5.) After Plaintiff and his counsel spoke in his defense at the executive session, the Board voted unanimously to dismiss Plaintiff both with cause and without cause. (Pl. SOF ¶ 41; Def. SOF ¶¶ 16-18; Dkt. No. 25, Pl. Reply SOF ¶¶ 16-17.) In support of the decision to dismiss

4

Plaintiff with cause, Mr. Shatz cited Plaintiff's testimony from his criminal trial that he allowed children to sit on his lap despite being warned not to do so, alleged complaints from other tenants in the town hall over Plaintiff's presence, and a forensic analysis of Plaintiff's work computer showing that he had viewed the Facebook profiles of several of the young women who ended up being his accusers. (Pl. SOF ¶¶ 46, 56, 59; Def. SOF ¶ 19.)

On March 12, 2014, the *Berkshire Eagle* published an article regarding Plaintiff's dismissal. (Pl. SOF ¶ 70; Def. SOF ¶ 21; *id.*, Ex. J.) In the article, Mr. Shatz disclosed Plaintiff's dismissal, declined to discuss the reasons for the dismissal, and is quoted as saying, "[w]e believe we were well within our rights" to dismiss Plaintiff. (Def. SOF, Ex. J.) Plaintiff's attorney at the time, Mr. Rota, was also quoted in the article. Mr. Rota stated, "[t]he town reinstated [Plaintiff] after he was acquitted and then placed him on administrative leave with pay." (*Id.* ¶ 25; *id.*, Ex. J.) Plaintiff concedes that Mr. Rota said this, but argues that "all evidence is to the contrary." (Pl. Reply SOF ¶ 25.) Following Plaintiff's dismissal and the publication of the article, Plaintiff also lost two part-time volunteer positions. (Pl. SOF ¶ 72.) Plaintiff has applied for numerous employment positions for which he is well qualified, but has not received a single reply or interview. (*Id.* ¶ 73.)

### IV.   DISCUSSION

#### A.   Count I – Deprivation of Property Interests

At-will government employees do not ordinarily have constitutionally protected property interests in continued employment, and therefore they are not entitled to constitutional due process protections before they are terminated. *See Ossinger v. City of Newton*, 533 N.E.2d 228, 231 (Mass. App. Ct. 1989) (citing *Bishop v. Wood*, 426 U.S. 341, 344-47 (1976)). To gain due process protections, an at-will employee "must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1st Cir. 2002). "Property interests are not created by the Constitution,

they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Plaintiff must therefore show that he had a property interest in continued employment created by state law, and he relies on Chapter 268A to do so. If someone is suspended pursuant to Chapter 268A and later acquitted, the statute provides that "his suspension shall be forthwith removed." Chapter 268A § 25. Removal of suspension is not automatic, however, and "the suspension remains in effect until the employee 'is notified . . . that the suspension is removed.'" *Brittle v. City of Boston*, 790 N.E.2d 208, 212 n.10 (Mass. 2003) (citing Chapter 268A § 25). Chapter 268A establishes a right to reinstatement following a suspension, but not an additional right to continued employment.

Defendant's position is that the February 21 letter reinstated Plaintiff, thereby fulfilling his rights under Chapter 268A, and then placed him on a separate administrative leave. By the time of the executive session, Defendant contends, Plaintiff was an at-will employee with no further property interests in his continued employment. (Def. SOF ¶¶ 14-15.) Plaintiff's position is that, while he was generally an at-will employee, the February 21 letter did not reinstate him, and at the time of the session he had a continued property interest in reemployment pursuant to Chapter 268A. (Pl. Reply SOF ¶¶ 14-15.)

To resolve the parties' cross-motions for summary judgment, the court must decide if there is a genuine issue of material fact as to whether Plaintiff was reinstated and then placed on a separate paid administrative leave, or whether his original suspension remained in place until his ultimate dismissal. The undisputed evidence boils down to the following. First, the February 19 letter enclosing Plaintiff's back pay stated, "[t]his payment shall not be construed as an admission of your right to reinstatement, a determination which is presently being considered." Second, the February 21 letter informed Plaintiff that he was "being placed on indefinite administrative leave with pay."

6

Third, during the executive session, Mr. Shatz said, "[t]he decision to reinstate is, in effect, a decision to hire." Fourth, Mr. Rota, the attorney who represented Plaintiff in his criminal trial and at the executive session, told the *Berkshire Eagle* that "[t]he town reinstated [Plaintiff] after he was acquitted and then placed him on administrative leave with pay."

These undisputed facts point inexorably to the conclusion that Plaintiff was reinstated pursuant to the February 21 letter, placed on a separate administrative leave, and then dismissed following the March 11 executive session.[3] There is no other reasonable interpretation of the series of letters beginning with the February 19 letter, which stated that a determination of Plaintiff's right to reinstatement was "presently being considered," and culminating in the February 21 letter, which stated that Plaintiff was "being placed on indefinite administrative leave with pay." The statements of Mr. Shatz and Mr. Rota only strengthen the conclusion that Plaintiff was reinstated before being ultimately dismissed. Accordingly, there is no genuine issue of material fact with respect to Count I, and summary judgment is warranted in Defendant's favor.

### B.   Count II – Deprivation of Liberty Interests

The crux of Plaintiff's claim regarding liberty interests is that Defendant's actions in connection with his dismissal interfered with his ability to obtain another job. A state's decision to dismiss an at-will employee "may damage the employee's reputation to such an extent that his 'liberty' to seek another job is significantly impaired." *Ortega-Rosario v. Alvarado-Ortiz*, 917 F.2d 71, 74 (1st Cir. 1990). "[W]here a public-sector employer creates and disseminates a false and defamatory impression about an employee in connection with the employee's discharge, the Due Process Clause requires the employer to provide the employee with an opportunity to dispute the defamatory

---

[3] While the court concludes Plaintiff was an at-will employee at the time of the executive session and thus was not entitled to constitutional due process protections, the court notes that, if the executive session had been subject to due process protections, it would have exhibited significant deficiencies in this regard.

7

allegations, and the employer's failure to do so is actionable under § 1983." *Burton v. Town of Littleton*, 426 F.3d 9, 15 (1st Cir. 2005).

To establish a claim that his public-sector employer deprived him of his liberty interests by creating a false and defamatory impression in connection with his discharge, Plaintiff must establish five elements: (1) the alleged statements must level a charge against the employee that might seriously damage his standing and associations in his community and puts his good name, reputation, honor, or integrity at stake; (2) Plaintiff must dispute the charges made against him as false; (3) the stigmatizing statements or charges must have been intentionally publicized by the employer; (4) the stigmatizing statements must have been made in conjunction with an alteration of Plaintiff's legal status, such as the termination of his employment; and (5) the employer must have failed to provide an adequate name-clearing hearing. *See Burton*, 426 F.3d at 15 (citing *Wojcik*, 300 F.3d at 103).

The *Berkshire Eagle* article reporting on Plaintiff's dismissal, in addition to noting that Mr. Shatz disclosed the fact of the termination, contains one quote from Mr. Shatz, and the entire sentence reads as follows: "While declining to discuss the reasons for terminating [Plaintiff], Shatz said, 'We believe we were well within our rights to do so.'" (Def. SOF, Ex. J.) This statement merely states the Board's position on its termination decision, and it does not "level a charge against" Plaintiff that "puts his good name, reputation, honor, or integrity at stake," meaning that Plaintiff is unable to satisfy the first element of the standard. As a more general matter, the statement cannot reasonably be viewed as creating a false and defamatory impression of Plaintiff. Plaintiff points out that Mr. Shatz made the decision to disclose the dismissal to the newspaper, and argues this decision "was clearly unnecessary and could have no purpose than to give the impression that it was related to the criminal allegations against him or other wrongdoing and to damage [Plaintiff's] remaining good name and integrity following acquittal." (Dkt. No. 15, Pl. Mem. Supp. Mot. Summ. J., at 19.)

8

But the undisputed evidence from Plaintiff's filings indicates that the *Berkshire Eagle* reporter had already been following his criminal trial (*see id.* at 8), so it is reasonable to infer that a story about his dismissal would have been written in any case, and mere disclosure of the fact of Plaintiff's termination does not create a false and defamatory impression by leveling a seriously damaging charge against him. Plaintiff's case is also undercut by the fact that his own attorney, Mr. Rota, spoke about the dismissal throughout the same article. Based on these undisputed facts, summary judgment is warranted in Defendant's favor on Count II.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. No. 19) is ALLOWED and Plaintiff's motion for summary judgment (Dkt. No. 14) is DENIED.

It is So Ordered.

                                         /s/ Mark G. Mastroianni  
                                         MARK G. MASTROIANNI  
                                         United States District Judge